UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Kenneth Lawson,

      Plaintiff,

      v.

Chief Justice Sharon Kennedy,
*et al.*,

      Defendants.

Case No. 2:25-cv-607

Judge Michael H. Watson

Magistrate Judge Vascura

<u>OPINION AND ORDER</u>

This matter is before the Court on (1) the motion seeking declaratory relief and preliminary injunction, ECF No. 2, filed by Kenneth Lawson ("Plaintiff"); and (2) the motion to dismiss, ECF No. 34, filed by the Supreme Court of Ohio, Chief Justice Sharon Kennedy, and Justices Jennifer Brunner, Joseph Deters, Patrick DeWine, Patrick Fischer, Daniel Hawkins, and Megan Shanahan (collectively, "Defendants").  Defendants also move to exclude the report of Plaintiff's expert, Dr. Jeffrey Goldsmith, which Plaintiff submitted in support of his preliminary injunction motion.  ECF No. 25.

For the reasons below, Plaintiff's motion for declaratory relief and preliminary injunction is **DENIED**, Defendants' motion to dismiss is **GRANTED in part** and **DENIED in part**, and Defendants' motion to exclude Plaintiff's expert report is **DENIED as moot**.

## I.    FACTUAL BACKGROUND

The following summary draws from the allegations in Plaintiff's Complaint, ECF No. 1, and any documents integral to and incorporated therein.[1]  Any facts beyond the Complaint that are relevant to Plaintiff's preliminary injunction motion are incorporated and discussed in Section IV below.

Plaintiff was admitted to practice law in Ohio in 1989.  Compl. ¶¶ 6, 20, ECF No. 1.  Taft Stettinius & Hollister LLP (a law firm based in Cincinnati, Ohio) hired Plaintiff as its first Black attorney.  *Id.* ¶ 21.  A few years later, Plaintiff left the firm and founded his own firm, where he specialized in criminal defense and civil rights law and served as "a lawyer for the people" and "a strong advocate for members of the Black community."  *Id.*

Plaintiff practiced law for over a decade without any disciplinary violations. Compl. ¶ 37, ECF No. 1.  But in the early 2000s, Plaintiff was prescribed opioids in connection with a medical problem.  *Id.* ¶ 22.  He subsequently became addicted to opioids, which caused him to neglect his work and mismanage his clients' cases and funds.  *Id.* ¶¶ 22, 49.  As a result, the Supreme Court of Ohio entered an interim remedial suspension against Plaintiff.  *Id.*; *see Disciplinary Couns. v. Lawson*, 866 N.E.2d 508 (Ohio 2007) (table).[2]  In particular, the

---

[1] Plaintiff's Complaint references three exhibits, *see* Compl. ¶¶ 25, 28, 40, but Plaintiff did not attach those exhibits to the Complaint for the Court to review or consider.

[2] Federal courts may take judicial notice of proceedings in other courts of record.  *See Lyons v. Stovall*, 188 F.3d 327, 333 n.3 (6th Cir. 1999).

Supreme Court of Ohio ordered, *inter alia*, that Plaintiff "immediately cease and desist from the practice of law in any form" pending the final disposition of his disciplinary proceedings.  *Lawson*, 866 N.E.2d at 508.

Shortly thereafter, a panel of the Board of Commissioners on Grievances and Discipline ("BCGD") held a hearing on Plaintiff's conduct, during which Plaintiff admitted to "the existence of a scheme whereby a doctor would write phony prescriptions for him, including by using the names of his clients, so he could have a continuous supply of prescription opioids."  Compl. ¶ 25, ECF No. 1.  The panel "made numerous findings of misconduct" and recommended that Plaintiff be indefinitely suspended from the practice of law.  *See Cincinnati Bar Assn. v. Lawson*, 891 N.E.2d 749, 754 (Ohio 2008).  The full BCGD adopted the panel's recommendation, and the Supreme Court of Ohio accepted the same.  *Id.*; *see also* Compl. ¶ 26, ECF No. 1.

The Government, in the meantime, charged Plaintiff with conspiracy to obtain controlled substances by deception, a felony in violation of 21 U.S.C. §§ 843(a)(3) and 846.  Compl. ¶ 27, ECF No. 1; *see* Information, ECF No. 1, *United States v. Lawson*, No. 1:08-cr-97 (Sept. 5, 2008).  Plaintiff pleaded guilty to the charge, and another Judge of this Court sentenced him to two years of imprisonment and one year of supervised release.  Compl. ¶ 27, ECF No. 1; *see* Am. Judgment, ECF No. 24, *Lawson*, No. 1:08-cr-97 (Apr. 14, 2009).  Considering Plaintiff's felony conviction, the Supreme Court of Ohio entered

another interim suspension order in July 2009.  *See In re Lawson*, 910 N.E.2d 1038 (Ohio 2009) (table).

In December 2009, a second disciplinary complaint was filed against Plaintiff arising from the conduct underlying his felony conviction.  Compl. ¶ 28, ECF No. 1; *see Disciplinary Couns. v. Lawson*, 956 N.E.2d 839, 841 (Ohio 2011).  The BCGD concluded that Plaintiff had committed the infractions alleged in the complaint and recommended an indefinite suspension to run consecutively to the previously imposed indefinite suspension that Plaintiff was serving. *Lawson*, 956 N.E.2d at 841.  "Despite the fact that the criminal case and the second disciplinary proceeding were based on the same evidence that had been presented in the initial disciplinary proceeding," the Supreme Court of Ohio did not follow the BCGD's recommendation.  Compl. ¶¶ 29–30, ECF No. 1.  Instead, the Supreme Court of Ohio ordered that Plaintiff be permanently disbarred, notwithstanding his interim rehabilitation.  *Id*.; *see Lawson*, 956 N.E.2d at 847.

Plaintiff, who was 61 years old at the time he filed the Complaint in this case, has been sober and drug free since February 2007.  Compl. ¶¶ 23, 31, ECF No. 1.  After completing his term of imprisonment, he moved to Hawai'i and now serves as a tenured professor of law at Richardson School of Law in Honolulu.  *Id*. ¶ 32.  He also acts as the Co-Director of the Hawai'i Innocence Project.  *Id*. ¶ 33.

Along with these positions, Plaintiff desires to practice law in Hawai'i. Compl. ¶ 33, ECF No. 1.  The Rules of the Supreme Court of the State of

Hawai'i, however, provide that lawyers who are disbarred or suspended from the practice of law in other states will not be admitted to the Hawai'i bar. *Id*. ¶ 34; *see also* Sup. Ct. Hawai'i R. 1.3(b)(5) ("An applicant shall not be allowed to . . . be admitted to the Hawai'i bar during any period in which the applicant is suspended or disbarred or allowed to practice only with supervision in any other jurisdiction."). Thus, Plaintiff seeks to secure readmission in Ohio so that the Supreme Court of Hawai'i will grant him admission to the Hawai'i bar. Compl. ¶ 35, ECF No. 1.

Ohio's disbarment rule ("Disbarment Rule"), however, imposes a permanent bar to the practice of law in Ohio. *See* Ohio Gov. Bar R. V, § 12(B) ("A person who is disbarred . . . shall not be readmitted to the practice of law in Ohio."). This is in contrast to Ohio's rules surrounding indefinite suspension, which permit a petition for reinstatement. Ohio Gov. Bar R. V, § 25. Plaintiff accordingly filed a motion for relief from judgment in the Supreme Court of Ohio in 2024, requesting indefinite suspension instead of disbarment. Compl. ¶ 36, ECF No. 1. The Supreme Court of Ohio denied the motion. *Id*.; *see also Disciplinary Couns. v. Lawson*, 233 N.E.3d 635 (Ohio 2024) (table). Because Plaintiff cannot apply for readmission in Ohio, he cannot apply for admission in Hawai'i. Notably, Ohio is one of only a few states that impose permanent disbarment. Compl. ¶ 1, ECF No. 1.

## II.    PROCEDURAL HISTORY

Plaintiff sued Defendants in this Court in June 2025. *See generally* Compl., ECF No. 1. He brings three claims for relief: (1) a disability discrimination claim against Defendants under Title II of the Americans with Disabilities Act ("ADA"); (2) a Fourteenth Amendment substantive due process claim against Chief Justice Kennedy and Justices Brunner, Deters, DeWine, Fischer, Hawkins, and Shanahan (collectively, the "Justices") in their official capacities under 42 U.S.C. § 1983; and (3) a Fourteenth Amendment equal protection claim against the Justices in their official capacities under 42 U.S.C. § 1983. *Id.* ¶¶ 53–72. Plaintiff does not seek monetary damages but requests declaratory and injunctive relief. *See id.* at Prayer for Relief.

In conjunction with filing his Complaint, Plaintiff moved for a preliminary injunction.[3] ECF No. 2. The Court held an informal conference with the parties and set a briefing schedule on particular issues raised in Plaintiff's motion. ECF No. 15; *see also* S.D. Ohio Civ. R. 65.1.

After briefing was completed, Defendants moved to dismiss Plaintiff's Complaint for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) or, in the alternative, for failure to state a claim under Federal

---

[3] Plaintiff also moved to consolidate the instant case with a case pending before another Judge of this Court, captioned *Terry v. Kennedy*, No. 2:24-CV-1200 (S.D. Ohio) (Marbley, J.). Although both cases involve challenges to the Disbarment Rule and assert claims against the same Defendants, the Court denied Plaintiff's consolidation request because the instant case had been pending for a shorter period and contains a different legal claim. *See* ECF No. 21.

Rule of Civil Procedure 12(b)(6).  ECF No. 34.  Defendants also moved to exclude Plaintiff's expert offered in support of a preliminary injunction.  ECF No. 25.  All motions are fully briefed and ripe for consideration.  *See* ECF Nos. 19, 20, 26, 31–33, 35–36.

### III.    MOTION TO DISMISS

Because Defendants seek dismissal of Plaintiff's Complaint for lack of subject-matter jurisdiction, the Court first addresses the motion to dismiss.

### A.    Standard of Review

Federal Rule of Civil Procedure 12(b)(1) provides for dismissal when a court lacks subject-matter jurisdiction.  Without subject-matter jurisdiction, a federal court lacks authority to hear a case.  *Thornton v. Sw. Detroit Hosp.*, 895 F.2d 1131, 1133 (6th Cir. 1990).  When subject-matter jurisdiction is challenged, "the plaintiff has the burden of proving jurisdiction in order to survive the motion." *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990).

"Motions to dismiss for lack of subject matter jurisdiction fall into two general categories: facial attacks and factual attacks."  *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994).  A facial attack "questions merely the sufficiency of the pleading"—thus the trial court takes the allegations of the complaint as true.  *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007).  A factual attack challenges the factual existence of subject-matter jurisdiction, such that no presumption of truth applies to the alleged facts.  *Ritchie*, 15 F.3d at 598.

Separately, a claim survives a motion to dismiss under Rule 12(b)(6) if it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). This standard "calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of [unlawful conduct]." *Twombly*, 550 U.S. at 556. A pleading's "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (internal citations omitted). At the motion-to-dismiss stage, a district court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Wamer v. Univ. Toledo*, 27 F.4th 461, 466 (6th Cir. 2022) (internal quotation marks and citations omitted). However, the non-moving party must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

## B.   Analysis

Defendants move to dismiss Plaintiff's Complaint on several grounds. First, Defendants argue that the Court lacks subject-matter jurisdiction under the *Rooker-Feldman* doctrine because Plaintiff has brought an as-applied challenge

to the Disbarment Rule as opposed to a facial challenge. ECF No. 34 at

PAGEID # 1828 (citing *District of Columbia Court of Appeals v. Feldman*, 460

U.S. 462, 476 (1983)); *see also Rooker v. Fidelity Trust Co.*, 263 U.S. 413

(1923). Second, Defendants contend that Plaintiff's claims are time barred. ECF

No. 34 at PAGEID # 1831. Third, Defendants argue that § 1983 does not

provide injunctive relief against the Justices for actions taken in their judicial

capacities. *Id*. at PAGEID # 1834. Finally, Defendants attack the merits of

Plaintiff's claims. *Id*. at PAGEID # 1835.

### 1. The *Rooker-Feldman* Doctrine

Defendants initially argue that the *Rooker-Feldman* doctrine bars Plaintiff's

claims in this case because his Complaint constitutes "an improper attempt to

appeal the Supreme Court of Ohio's disbarment decision[.]" ECF No. 34 at

PAGEID # 1828. Upon review, the Court finds that the *Rooker-Feldman* doctrine

precludes the Court's jurisdiction over some, but not all, of Plaintiff's Complaint.

Specifically, insofar as Plaintiff retrospectively attacks Defendants' decision to

disbar him, his claims are barred. But to the extent that Plaintiff generally and

prospectively challenges the constitutionality and validity of the Disbarment Rule,

his claims may proceed.

### a. Doctrine Overview

The *Rooker-Feldman* doctrine "is confined to cases of the kind from which

the doctrine acquired its name: cases brought by state-court losers complaining

of injuries caused by state-court judgments rendered before the district court

proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). But "[i]f a federal plaintiff presents some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party, then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion." *Id.* at 293 (internal quotation marks and citations omitted). The *Rooker-Feldman* doctrine thus applies "only when a plaintiff complains of injury from the state court judgment itself." *Coles v. Granville*, 448 F.3d 853, 858 (6th Cir. 2006); *see also McCormick v. Braverman*, 451 F.3d 382, 394 (6th Cir. 2007) ("The key point is that the source of the injury must be from the state court judgment itself; a claim alleging another source of injury is an independent claim.").

*Feldman* is particularly instructive in this case. There, two plaintiffs were denied admission to the District of Columbia bar because neither had graduated from accredited law schools as the District of Columbia's admission rules required. *Feldman*, 460 U.S. at 465–73. The Supreme Court held, *inter alia*, that the district court below had jurisdiction over only those elements of the plaintiffs' complaints that involved "a general challenge to the constitutionality" of the admissions rule. *Id.* at 487.

In so holding, the *Feldman* Court recognized "the difference between seeking review in a federal district court of a state court's final judgment in a bar admission matter and challenging the validity of a state bar admission rule[.]" *Id.*

at 483–84; *see also id.* at 485 (noting "the distinction between general challenges to state bar admission rules and claims that a state court has unlawfully denied a particular applicant admission").  On one hand, district courts "have subject matter jurisdiction over general challenges to state bar rules, promulgated by state courts in non-judicial proceedings, which do not require review of a final state court judgment in a particular case." *Id.* at 486.  On the other hand, district courts do not have jurisdiction "over challenges to state court decisions in particular cases arising out of judicial proceedings even if those challenges allege that the state court's action was unconstitutional." *Id.*; *see also* 28 U.S.C. § 1257(a) ("Final judgments or decrees rendered by the highest court of a State in which a decision could be had, may be reviewed *by the Supreme Court* by writ of certiorari[.]" (emphasis added)).

Applying these principles, the *Feldman* Court concluded that the district court lacked jurisdiction over the plaintiffs' complaints to the extent that they sought review of the decision denying their petitions for a waiver of the admissions rule. *Feldman*, 460 U.S. at 487.  These allegations, the *Feldman* Court observed, were "inextricably intertwined with the District of Columbia Court of Appeals' decisions, in judicial proceedings, to deny [the plaintiffs'] petitions," such that the district court did "not have jurisdiction over these elements."[4]  *Id.*

_____

[4] To be sure, the Supreme Court implicitly repudiated the circuits' post-*Feldman* use of the phrase "inextricably intertwined" to extend *Rooker-Feldman* to situations where the source of the injury was not the state court judgment.  *See Exxon Mobil Corp v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 286 n.1 (2005).  "In short, the phrase 'inextricably

However, the remaining allegations in plaintiffs' complaints "involve[d] a general attack on the constitutionality of" the admissions rule.  *See id.* (detailing plaintiffs' claims "that the rule is unconstitutional because it creates an irrebuttable presumption that only graduates of accredited law schools are fit to practice law, discriminates against those who have obtained equivalent legal training by other means, and impermissibly delegates the . . . power to regulate the bar").  Consequently, because "review of a judicial decision" was not required to adjudicate those claims, the district court could exercise jurisdiction.  *Id.* at 488.

### b. Application to Plaintiff's Complaint

In evaluating Defendants' *Rooker-Feldman* challenge, the Court's "central task" is to "distinguish between a claim that attacks a state court judgment and an independent claim, the latter in which jurisdiction may be asserted."  *King v. CitiMortgage, Inc.*, No. 2:10-CV-01044, 2011 WL 2970915, at *6 (S.D. Ohio July 20, 2011).  The Court looks to the "source of the injury [Plaintiff] alleges in the [Complaint]" and Plaintiff's request for relief.  *VanderKodde v. Mary Jane M. Elliott, P.C.*, 951 F.3d 397, 402 (6th Cir. 2020) (citations omitted).  Additionally, Defendants aver that they make a "factual attack on subject matter jurisdiction," ECF No. 34 at PAGEID # 1827, so "the [C]ourt is free to take and weigh the

---

intertwined' only describes the conclusion that a claim asserts an injury whose source is the state court judgment, a claim that is thus barred by *Rooker-Feldman*." *McCormick*, 451 F.3d at 394–95.

evidence and satisfy itself as to the existence of its power to hear the case,"
*King*, 2011 WL 2970915, at *4 (citing *Ritchie*, 15 F.3d at 598).

Focusing on Plaintiff's alleged injury, he asserts that he is unable to
"secure readmission in Ohio" because he has been prevented from "seek[ing]
reinstatement" to the Ohio bar. Compl. ¶¶ 35, 51–52, ECF No. 1. According to
Plaintiff, Defendants have harmed him "by imposing disbarment and denying to
him any opportunity to seek re-admission to practice for the rest of his life." *Id*.
¶¶ 61, 65, 72. In terms of relief for these injuries, Plaintiff seeks a declaratory
judgment that the Disbarment Rule "violates the United States Constitution and
federal law." Compl. ¶ 2, ECF No. 1; *see also id.* at Prayer for Relief (requesting
"a declaratory judgment that Defendant[s'] actions and inactions are unlawful and
unconstitutional as applied to Plaintiff"). He also seeks preliminary and
permanent injunctive relief prohibiting Defendants from enforcing the Disbarment
Rule against him and requiring Defendants to allow him to seek reinstatement to
the Ohio bar in accordance with the procedures for attorneys who have been
indefinitely suspended. *Id*. at Prayer for Relief.

Portions of Plaintiff's Complaint clearly take issue with Defendants'
imposition of disbarment, which occurred in the context of the Supreme Court of
Ohio's disbarment order in 2011 (and, to some extent, its denial of Plaintiff's
motion for relief from judgment in 2024).[5] *See Lawson*, 956 N.E.2d at 847.

---

[5] To clarify, though, none of the Justices named as Defendants in this case participated
in the Supreme Court of Ohio's disbarment decision in 2011. *See Lawson*, 956 N.E.2d

Although Plaintiff maintains that "[h]e does not challenge the disbarment itself," ECF No. 35 at PAGEID # 1865, certain allegations in his Complaint belie his position.  For instance, Plaintiff protests that Defendants "noted Plaintiff's addiction and interim rehabilitation, but imposed permanent disbarment notwithstanding that finding."  Compl. ¶ 30, ECF No. 1.  He contends that *his* case "is an outlier when compared with other attorneys disciplined between 2008 and 2011" and that *his* disbarment was "highly unusual."  *Id*. ¶¶ 38, 41; *see also id*. ¶¶ 39–40, 42–43 (offering statistics showing infrequency of disbarment and alleging that "Defendant Ohio Supreme Court followed the recommendation of or gave a lower sanction [than] . . . the Board of Commissioners on Grievances and Discipline in all these cases except for [Plaintiff's]").  "In light of [his] rehabilitation and recovery," Plaintiff continues, Defendants' decision to disbar him "based on his history of addiction substitutes judgment of [Plaintiff's] current fitness to practice law[ ] for an impermissible generalization about the moral character and qualifications of persons with active addiction."  *Id*. ¶ 61.  These allegations essentially amount to criticisms of the Supreme Court of Ohio's disbarment decision and how it arrived at the same, confirming that the decision is, to some extent, the source of Plaintiff's injury.

---

at 847 (listing Chief Justice O'Connor and Justices Pfeifer, Lundberg Stratton, O'Donnell, Cupp, McGee Brown, and Lanzinger).  Additionally, Justices Brunner and Deters did not participate in the Supreme Court of Ohio's denial of Plaintiff's motion for relief from judgment in 2024, *see Lawson*, 233 N.E.3d at 635, nor did Justices Shanahan and Hawkins, who had yet to be appointed.

Plaintiff's requested relief further reinforces this conclusion. He broadly asks the Court to declare that "Defendant[s'] actions and inactions are unlawful and unconstitutional as applied to [him]." Compl. at Prayer for Relief, ECF No. 1. These "actions and inactions" include, *inter alia*, deciding to disbar Plaintiff and refusing to amend that judgment. Where, as here, "a plaintiff asserts before a federal district court that a state court judgment itself was unconstitutional or in violation of federal law," the *Rooker-Feldman* doctrine acts to preclude jurisdiction. *McCormick*, 451 F.3d at 395; *see, e.g.*, *Loriz v. Connaughton*, 233 F. App'x 469, 475 (6th Cir. 2007) ("[T]he relief the Lorizes seek—a declaration that the state courts reached an improper result based on a faulty application of the law—is . . . a specific grievance over specific decisions. These claims are exactly the type the *Rooker-Feldman* doctrine intended to bar[.]"). Moreover, Plaintiff urges the Court to require Defendants to allow him "to seek reinstatement to the Ohio bar in accordance with the procedures indefinitely suspended attorneys are required to follow." Compl. at Prayer for Relief, ECF No. 1. This is the same relief that Plaintiff sought from the Supreme Court of Ohio in 2024 when he moved to amend the disbarment judgment. *See id.* ¶ 36. Such averments indicate that Plaintiff is, in part, challenging his disbarment and Defendants' conduct during the same, which he may not do in this Court under the *Rooker-Feldman* doctrine.

On the other hand, some parts of Plaintiff's Complaint suggest that he is *also* launching an attack on the constitutionality and validity of the Disbarment

Rule, separate and apart from his prior disbarment proceedings. Plaintiff explicitly alleges the Justices' general "authority to promulgate and amend" the Disbarment Rule. Compl. ¶ 57, ECF No. 1. He points to Ohio's overarching recognition of substance abuse disorders as diseases requiring treatment, and he references "recovered addicts" and "disciplined attorney[s]" as generalized groups (albeit, of which he is an example). *Id.* ¶¶ 47–48; *see also id.* ¶¶ 67, 71 (alleging that the Disbarment Rule improperly "prevents any presentation of the rehabilitation and reform of the disciplined attorney" and "treats those disbarred differently than other similarly situated people").

Looking at Plaintiff's sought-after relief, a declaration that Defendants' "actions and inactions are unlawful and unconstitutional" would encompass conduct related to the promulgation and enforcement of the Disbarment Rule, irrespective of Plaintiff's involvement therewith. *Id.* at Prayer for Relief. And Plaintiff's primary request for relief is protection from the Disbarment Rule— through a declaratory judgment and injunction—on a going-forward basis. *Id.*; *see also id.* ¶ 2 ("[Plaintiff] seeks a declaratory judgment declaring that the Ohio Disciplinary Rule authorizing disbarment violates the United States Constitution and federal law and an injunction against enforcing the disbarment rule as applied to him under the ADA."); *State v. Yellen*, 539 F. Supp. 3d 802, 813 (S.D. Ohio 2021) ("To be sure, this is in part a declaratory judgment action, which is inherently a form of prospective relief."); *see, e.g., Dubuc v. Michigan Bd. of L. Examiners*, 342 F.3d 610, 619 (6th Cir. 2003) (finding plaintiff's claims

permissible under the *Rooker-Feldman* doctrine when "the relief he seeks relates to his rights with regard to reapplying for admission to the Bar"). It would seem, then, that at least a part of Plaintiff's Complaint may proceed.

Defendants contend that Plaintiff's injury (his inability to seek reinstatement) "was caused by the Supreme Court of Ohio's decision to disbar him," ECF No. 36 at PAGEID # 1870, but this position glosses over a subtle but important distinction. True, the Supreme Court of Ohio disbarred Plaintiff and was presumably fully aware of the consequences of that decision (i.e., that disbarment meant a permanent prohibition on readmission because of the Disbarment Rule). But the Court disagrees with Defendants' contention that the "disbarment decision *is* the application of the Disbarment Rule," ECF No. 34 at PAGEID # 1830 (emphasis in original), because that decision itself does not inherently prevent Plaintiff from applying for reinstatement—it simply classifies Plaintiff as a disbarred attorney. It is the Disbarment Rule's explicit terms that keep him from readmission. *See* Ohio Gov. Bar R. V, § 12(B) ("A person who is disbarred . . . shall not be readmitted to the practice of law in Ohio."). It is the Disbarment Rule's lack of a path to readmission in any circumstance that Plaintiff insists is unconstitutional and invalid, so it is the Disbarment Rule that is the source of his injury.

Defendants further highlight that Plaintiff is attacking the constitutionality and ADA compliance of the Disbarment Rule *as applied to him* as a rehabilitated drug addict. Although this is not the traditional "facial" constitutional challenge

that the *Rooker-Feldman* doctrine envisions, "[w]hen the litigant is challenging the constitutionality of a rule that was applied to him, but is not asking to correct or revise the determination that he violated the rule, *Rooker-Feldman* is no obstacle to the maintenance of the suit." *Dubuc*, 342 F.3d at 618. Plaintiff claims, at least in part, that the Disbarment Rule violates the Constitution and the ADA, not that the Supreme Court of Ohio made a legal error in imposing disbarment. The Disbarment Rule sets forth conduct that a disbarred attorney may not take part in after disbarment and does not, itself, affect past disbarment proceedings. Consequently, insofar as Plaintiff's claims do not implicate the Supreme Court of Ohio's disbarment ruling, he is not seeking review of a state court decision, and *Rooker-Feldman* does not bar his claims.

### 2. Statute of Limitations

Defendants next argue that Plaintiff's claims are barred by the statute of limitations. ECF No. 34 at PAGEID ## 1831–34. Specifically, Defendants contend that a two-year statute of limitations applies to all of Plaintiff's claims and that the statute of limitations began to run on the date that the Supreme Court of Ohio disbarred Plaintiff (September 20, 2011) because he knew on that day that the Disbarment Rule would forever prevent his readmission to the Ohio bar. *Id.* Moreover, Defendant urges the Court to depart from the decision in *Terry* and decline to find a continuing violation here. *Id.* (citing *Terry v. Kennedy*, No. 2:24-CV-1200, 2025 WL 948919, at *7 (S.D. Ohio Mar. 28, 2025)).

But the Court finds *Terry* persuasive as to each of Plaintiff's claims here. The *Terry* Court determined that the disbarred plaintiff's claim was analogous to the claim in *Kuhnle Bros., Inc., v. Cty. of Geauga*, 103 F.3d 516, 521–22 (6th Cir. 1997). In *Kuhnle*, the Sixth Circuit applied the continuing violation theory in the context of a substantive due process challenge to a traffic resolution. *Id.* at 522. Although the county that enacted the traffic resolution had not "commit[ted] any invalid acts" after passing the resolution, it still "barred Kuhnle from using the roads in question on an ongoing basis, and thus actively deprived Kuhnle of its asserted constitutional rights every day that it remained in effect." *Id.*

So too, here. As explained above, it is not the case that Plaintiff's 2011 disbarment decision forever prohibited him from reapplying for admission and that he thus merely continues to feel the effect of that prohibition. Instead, the Disbarment Rule is what prevents disbarred attorneys from applying for readmission. That Disbarment Rule continues, every day, to prohibit Plaintiff from applying for readmission. In other words, if the Disbarment Rule were stricken tomorrow, Plaintiff could presumably apply for readmission—notwithstanding his 2011 disbarment—which shows that the Disbarment Rule causes a new harm each day that it remains in effect. *See Centifanti v. Nix*, 865 F.2d 1422, 1432–33 (3d Cir. 1989) (finding disbarred attorney's general challenges to state rule were subject to the continuing violation theory).

This case is unlike the two cases on which Defendants rely. First, it is unlike *Cornelius v. Mich. Attorney Grievance Comm'n*, 510 F. App'x 404 (6th Cir.

2013), because the plaintiff in that case challenged only the actual order revoking his law license—he did not raise a general constitutional challenge to the state's disciplinary rules. *Id.* at 406. Similarly, the plaintiff in *Printup v. Director, Ohio Dept. of Jobs and Family Servs.*, 654 F. App'x 781 (6th Cir. 2016), attacked discrete decisions, and the Sixth Circuit concluded that the plaintiff could not end-run the statute of limitations merely by arguing that those decisions arose from an ongoing "custom or policy" of failing to train county employees. *Id.* at 789. Moreover, because that plaintiff's initial designation as a child abuser resulted in her appearance in a central registry and the loss of her job, the mere continued appearance on the registry and continued unemployment were simply the effects of the initial action rather than daily unlawful acts. *Id.* at 789–90.

As in *Cornelius* or *Printup*, Plaintiff here could not invoke the continuing violation doctrine merely by arguing that he continues to be disbarred under Ohio law. Continued disbarment is merely the lasting effect of the 2011 decision. But Plaintiff's challenge to the ongoing application of the Disbarment Rule, without which he could reapply for admission despite his prior disbarment, distinguishes this case from *Cornelius* and *Printup*. As explained above, Plaintiff alleges that the Disbarment Rule causes new harm each day because that rule, rather than the past disbarment, applies each day to prevent him from seeking readmission.

Finally, though *Kuhnle* and *Terry* are on point only as to the substantive due process and equal protection claims, the Court concludes that the continuing violation theory also applies to Plaintiff's ADA claim. To the extent that he is not

arguing that he was previously discriminated against because of his disability and continues to feel the effect of that discrimination, he sufficiently alleges that the Disbarment Rule works to discriminate against him anew each day.

### 3.     Injunctive Relief under § 1983

Section 1983 provides for suits in law and in equity arising from the deprivation of a claimant's rights, privileges, or immunities.  *See* 42 U.S.C. § 1983.  As relevant here, though, the statute prohibits a grant of injunctive relief "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity . . . unless a declaratory decree was violated or declaratory relief was unavailable."  *Id.*  In other words, "[t]he plain language of § 1983 allows suits for injunctions" in such actions "only after a litigant has sought a declaratory judgment."  *Terry*, 2025 WL 948919, at *4 (citing *Ward v. City of Norwalk*, 640 F. App'x 462, 466 (6th Cir. 2016)).

Plaintiff's Complaint requests both declaratory and injunctive relief against the Justices, who were acting in their official capacities as judicial officers.  *See, e.g.*, Compl. ¶ 7, ECF No. 1 ("The Ohio Supreme Court is vested with the power to regulate the practice of law in Ohio, including admitting new attorneys, disciplining current attorneys, and setting the rules for readmission to the practice of law of disbarred or disciplined attorneys."); *id.* ¶ 65 ("The defendant members of the Ohio Supreme Court in their official capacities have violated Plaintiff's right to due process of law by imposing disbarment and denying to him any opportunity to seek re-admission to practice for the rest of his life.").  But Plaintiff

has not alleged any facts suggesting that a declaratory decree was violated or that declaratory relief was unavailable.  So, Plaintiff must first seek a declaratory judgment (or demonstrate the unavailability of the same) before he may demand an injunction.[6]  *See, e.g., Ward*, 640 F. App'x at 467; *Terry*, 2025 WL 948919, at *4.  Because he has not done so, the injunctive relief that he seeks against the Justices under § 1983 is statutorily barred, and Defendants' motion to dismiss is **GRANTED** as to this issue.[7]

### 4.    Merits of Plaintiff's Claims

Finally, Defendants attack the merits of Plaintiff's ADA, due process, and equal protection claims.  The Court, however, finds that these claims may proceed at this juncture.

### a.    ADA Claim

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.  Courts

---

[6] For this reason, Plaintiff's position that he "asks that this Court [grant] injunctive relief against [the] Justices only after the issuance of a declaratory judgment" and that he is "merely presev[ing] [his] rights in the event a declaratory judgment is not complied with," ECF No. 35 at PAGEID # 1866, is unavailing and highlights the prematurity of his claim for injunctive relief.

[7] Plaintiff does not assert § 1983 claims against the Supreme Court of Ohio, nor could he.  *See, e.g., Terry*, 2025 WL 948919, at *5 (observing that the Supreme Court of Ohio is not *sui juris* for purposes of § 1983 claims); *see also Malone v. Court of Common Pleas of Cuyahoga County*, 344 N.E.2d 126, 128 (Ohio 1976) ("Absent express statutory authority, a court can neither sue nor be sued in its own right.").

broadly construe the phrase "services, programs, or activities," finding that it captures "virtually everything that a public entity does." *Marble v. Tennessee*, 767 F. App'x 647, 651 (6th Cir. 2019) (citation omitted).  A "public entity," in turn, is any state or local government, including departments and agencies.[8]  42 U.S.C. §§ 12131(1)(A)–(B).

"Title II requires a plaintiff to show that (1) he has a disability; (2) he is a 'qualified individual'; and (3) he was 'being excluded from participation in, denied the benefits of, or subjected to discrimination under the program because of' his disability." *Larson v. Eppinger*, No. 2:20-CV-4997, 2021 WL 2659998, at *6 (S.D. Ohio June 29, 2021) (quoting *Anderson v. City of Blue Ash*, 798 F.3d 338, 357 (6th Cir. 2015)).  At the pleading stage, the plaintiff need not allege facts establishing a *prima facie* case of disability discrimination to survive a motion to dismiss—rather, the plaintiff must only allege "sufficient facts, accepted as true . . . to state a claim under the ADA[.]" *Morgan v. St. Francis Hosp.*, No. 19-5162, 2019 WL 5432041, at *2 (6th Cir. Oct. 3, 2019) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510–12 (2002)).

_____

[8] Here, Plaintiff brings his ADA claim against all Defendants, alleging that the Supreme Court of Ohio is a public entity encompassed by Title II and that the Justices may be sued "in the same manner as a 'public entity' may be sued."  Compl. ¶ 55, ECF No. 1. Although Congress specifically abrogated Eleventh Amendment immunity for ADA claims, that abrogation is not absolute.  *See Babcock v. Michigan*, 812 F.3d 531, 534–35 (6th Cir. 2016); *see also, e.g.*, *O'Mara v. Cmty. Mental Health of Washtenaw Cnty.*, No. 21-12278, 2022 WL 6581110, at *5 (E.D. Mich. Aug. 8, 2022), *R&R adopted*, 2022 WL 4355140 (E.D. Mich. Sept. 19, 2022) (outlining factors for courts to consider in determining immunity).  The Court need not wade into this fray, however, because Defendants neither challenge Plaintiff's allegations as to their public-entity status nor point to this element as a basis for dismissal.

Defendants do not challenge the existence of Plaintiff's disability in this case.  *See also, e.g.*, *Maxson v. Baldwin*, No. 23-3702, 2024 WL 1282458, at *3 (6th Cir. Mar. 26, 2024) ("Addictions that substantially limit a major life activity are covered disabilities under the ADA.").  Instead, Defendants attack the second and third elements, arguing that Plaintiff's misconduct means he is not "otherwise qualified" to petition for reinstatement and that Plaintiff has not alleged facts showing that but for his disability (being a recovered addict), he would be able to petition for reinstatement.  ECF No. 34 at PAGEID # 1836.

### i.         Qualified Individual

Turning to the second element, "[t]he term 'qualified individual' means an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."  42 U.S.C. § 12111(8).

Plaintiff seeks to practice law, and the allegations in his Complaint suggest that he has the ability to perform the essential functions of a legal practitioner—he has a J.D. from a reputable law school and did practice law for eighteen years, during which time he started his own firm with "great success."  Compl. ¶¶ 6, 20–21, ECF No. 1.  Sober since February 2007, Plaintiff is now a tenured law professor and co-directs the Hawai'i Innocence Project, and his current employer "entrusts him with fiduciary and fiduciary-like responsibilities in the administration of grants and other university programs." *Id.* ¶¶ 32–33, 50.  The Complaint, as a whole, alleges that Plaintiff was a successful attorney when he

was not using drugs.  Putting aside his misconduct, Plaintiff appears to otherwise meet the essential eligibility criteria to be an attorney in Ohio, and Defendants do not disagree.

Defendants instead draw the line at the misconduct.  Defendants maintain that Ohio requires individuals seeking bar admission to demonstrate a particular "level of moral character," a trait that the Supreme Court of Ohio found Plaintiff to be lacking when it disbarred him.  ECF No. 34 at PAGEID # 1837.

As pertinent here, "a qualified individual with a disability shall not include any employee or applicant who is currently engaging in the illegal use of drugs, when the covered entity acts on the basis of such use."  42 U.S.C. § 12114(a). But the ADA offers a safe harbor to litigants who, like Plaintiff, have alleged their rehabilitation from past drug use—indeed, the statute provides that "[n]othing in subsection (a) shall be construed to exclude as a qualified individual with a disability an individual who . . . (1) has successfully completed a supervised drug rehabilitation program and is no longer engaging in the illegal use of drugs, or has otherwise been rehabilitated successfully and is no longer engaging in such use."  42 U.S.C. § 12144(b).  So, Plaintiff's former use of illegal drugs does not, standing alone, prevent the Court from deeming Plaintiff an otherwise qualified individual.  And Plaintiff's misconduct arose directly from his addiction, or at least he alleges as much.  *See, e.g.*, Compl. ¶ 49, ECF No. 1 ("Plaintiff was disbarred for, *inter alia*, misappropriation of client funds.  His misconduct was driven by his addiction[.]").  That is sufficient, at this stage of the proceedings, for the Court to

find this element satisfied, particularly considering the discussion of reasonable accommodations below.

### ii.    Causation

A plaintiff may satisfy the third element (causation) using two different theories: (1) intentional discrimination, and (2) failure to make reasonable accommodations.  *Finley v. Huss*, 102 F.4th 789, 820 (6th Cir. 2024) (citing *S.S. v. E. Ky. Univ.*, 532 F.3d 445, 453 (6th Cir. 2008)).  Plaintiff alleges failure to reasonably accommodate.  ECF No. 35 at PAGEID # 1855; ECF No. 32 at PAGEID ## 1807–08.  This theory stems from a regulation implementing Title II, which states in relevant part:

> A public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity.

28 C.F.R. § 35.130(b)(7)(i).

Thus, to state a claim for failure-to-accommodate under Title II, a plaintiff may allege facts to show that he was "excluded from participation in, denied the benefits of, or subjected to discrimination because of" a disability due to the public entity's failure to make a "reasonable modification" pursuant to this regulation.[9]  *See Larson*, 2021 WL 2659998, at *6.  The entity need not make the

---

[9] In his preliminary injunction briefing, Plaintiff references another regulation, 28 C.F.R. § 35.130(b)(8), which prohibits public entities from imposing or applying "eligibility criteria that screen out . . . an individual with a disability . . . from fully and equally enjoying any service, program, or activity, unless such criteria can be shown to be

accommodation, however, if it either "imposes undue financial and administrative burdens on a grantee, or requires a fundamental alteration in the nature of [the] program." *Sandison v. Michigan High Sch. Athletic Ass'n*, 64 F.3d 1026, 1034 (6th Cir. 1995) (quoting *School Bd. of Nassau County v. Arline*, 480 U.S. 273, 287 n.17 (1987)).

Plaintiff has sufficiently alleged, at this stage of the proceedings, that he was subjected to discrimination because of his addiction disability. *See Douglas v. Muzzin*, No. 21-2801, 2022 WL 3088240, at *5 (6th Cir. Aug. 3, 2022) ("[T]he ADA requires that discrimination occur 'because of' a plaintiff's disability[.]"). The Disbarment Rule forecloses a path to readmission for any disbarred attorney, and as noted above, Plaintiff alleges that his chemical dependency directly led to his disbarment and, by extension, his inability to apply for re-admission. *See* Compl. ¶¶ 22, 49, ECF No. 1. He asserts that he would be able to apply for readmission but for his status as a disbarred recovered addict. Instead, the Disbarment Rule discriminates against him by excluding him from participating in the reinstatement process as a result of his addiction-related misconduct.

---

necessary for the provision of the service, program, or activity being offered." However, allegations of Defendants' liability under this theory are absent from the Complaint. A plaintiff may not assert new theories of liability in a preliminary injunction motion, so the Court will not consider the allegations surrounding this "screening" regulation. *See, e.g., HealthCall of Detroit, Inc. v. State Farm Mut. Auto. Ins. Co.,* No. 22-10797, 2022 WL 3153780, at *10 n.12 (E.D. Mich. Aug. 8, 2022) ("In its *Motion for Preliminary Injunction*, HealthCall asserts that Section 3157 'leaves certain medical providers' with 'a confiscatory rate freeze under Sections 3157(2) and (8)[,]' . . . [b]ut no confiscatory 'rate freeze' claim is pleaded *in HealthCall's operative complaint.* HealthCall cannot assert new claims in its Motion for Preliminary Injunction." (emphasis in original)).

Additionally, "[w]hen a plaintiff shows that the proposed modification is needed to avoid the denial of services or benefits, the causation requirement is satisfied." *Douglas*, 2022 WL 3088240, at *6.  Here, Plaintiff alleges that he would be able to access the reinstatement procedure (i.e., have the option to reapply) if Defendants accommodated him.  Specifically, Plaintiff suggests that Defendants modify the Disbarment Rule to permit disbarred attorneys to seek reinstatement in the same way that similarly situated indefinitely suspended attorneys do.  *See* Compl. ¶ 52, ECF No. 1; *cf. id.* ¶ 47 ("To reasonably accommodate recovered addicts, they must be given an opportunity to show that they are now recovered[.]").  Whether this is a *reasonable* accommodation is not a proper inquiry for this stage of the case, particularly where, as here, Defendants do not move to dismiss Plaintiff's Complaint on the ground that this proposed accommodation would fundamentally alter Ohio's disciplinary regime. *See* ECF No. 36 at PAGEID # 1871 n.1; *Ability Ctr. of Greater Toledo v. Lumpkin*, 808 F. Supp. 2d 1003, 1024 (N.D. Ohio 2011) ("Determining whether a modification or accommodation is reasonable always requires a fact-and context-specific inquiry." (citing cases)).

Accordingly, Plaintiff has alleged sufficient facts that, when accepted as true, state a claim under Title II of the ADA.  Defendants' motion to dismiss this claim is therefore **DENIED**.

### b. Due Process

Under the Fourteenth Amendment, "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. The due process clause has both substantive and procedural components. *EJS Props., LLC v. City of Toledo*, 698 F.3d 845, 855 (6th Cir. 2012). A review of Plaintiff's Complaint (and his opposition to Defendants' motion to dismiss) indicates that Plaintiff brings only a substantive due process claim.

Substantive due process "bar[s] certain government actions regardless of the fairness of the procedures used to implement them." *Daniels v. Williams*, 474 U.S. 327, 331 (1986). It "specifically protects those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed." *Washington v. Glucksberg*, 521 U.S. 702, 720–21 (1997) (internal quotation marks and citations omitted).

If a rule or provision implicates a fundamental right, courts review that rule or provision under the strict-scrutiny test, which requires narrow tailoring to serve a compelling state interest. *Doe v. Michigan Dep't of State Police*, 490 F.3d 491, 500 (6th Cir. 2007). If a fundamental right is not implicated, courts utilize rational basis review and ask whether the rule or provision is "rationally related to legitimate government interests." *Glucksberg*, 521 U.S. at 728.

The list of fundamental rights is "short," and "[t]he right to pursue one's chosen profession is not an established fundamental right." *Terry*, 2025 WL

948919, at *9 (citations omitted).  As such, Plaintiff's allegations about "[t]he right to practice law," Compl. ¶ 64, ECF No. 1, do not involve a fundamental right.  So, to prevail under rational basis, Plaintiff must allege "the existence of a constitutionally-protected property or liberty interest" and an "arbitrary and capricious action" to establish a substantive due process claim.  *Johnson v. Morales*, 946 F.3d 911, 932 (6th Cir. 2020).  Plaintiff has pleaded both of these elements here.

The *Terry* case is again instructive.  There, another Judge of this Court determined that the plaintiff, who was also alleging a substantive due process violation stemming from the Disbarment Rule, had "sufficiently alleged the failure of the Disbarment Rule to meet the standards of rational-basis review."  *Terry*, 2025 WL 948919, at *9.  The plaintiff's assertions that no rational justification existed for the Disbarment Rule's "outright ban on the consideration of reinstatement" of disbarred attorneys regardless of rehabilitation—coupled with the facts "regarding permanent disbarment without possibility of reinstatement" and case law "suggesting that a complete prohibition of the pursuit of one's profession is less likely to be found constitutional than a brief prohibition"— convinced the Court in *Terry* that the plaintiff had adequately alleged "a complete prohibition from the practice of law that has no rational connection to his fitness to practice law" to survive a motion to dismiss.  *Id.* at *9–10.

This Court finds the *Terry* Court's reasoning persuasive here.  Plaintiff asserts similar allegations surrounding the Disbarment Rule's rationality as the

plaintiff in *Terry*.  Plaintiff maintains that the Disbarment Rule's complete prohibition from the practice of law is not rationally linked to his current ability to be a lawyer.  *See* Compl. ¶ 68, ECF No. 1.  "This is sufficient to survive a motion to dismiss."  *Terry*, 2025 WL 948919, at \*10.

Therefore, the Justices' motion to dismiss this claim is **DENIED**.

### c. Equal Protection

Last, the Justices challenge Plaintiff's equal protection claim under the Fourteenth Amendment, which provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. Amend. XIV.  To state such a claim, a plaintiff must adequately plead that the government treated the plaintiff "disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis."  *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011); *see also, e.g.*, *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006) (observing that the "threshold element of an equal protection claim is disparate treatment").

Here, Plaintiff alleges neither the infringement of a fundamental right nor his membership in a suspect class, so he must allege disparate treatment having no rational basis as part of his "class of one" claim.  He does that here. Specifically, he asserts that "[t]he Disbarment Rule treats those disbarred differently than other similarly situated people—others with similar criminal and disciplinary records—who were given an opportunity to rehabilitate and later

demonstrate rehabilitation and present fitness and moral character." Compl. ¶ 71, ECF No. 1. Plaintiff contends that the Justices, by virtue of the permanent Disbarment Rule, are treating him differently because of his past illegal drug use and that such treatment has no legitimate rationale. *Id.* ¶¶ 67, 68, 72.

The Justices' arguments to the contrary are unavailing. First, the Justices maintain that Plaintiff has failed to show the lack of a rational basis for the Disbarment Rule, but their argument fails to persuade for the same reasons as the Court explains above with respect to due process.

Second, the Justices contend that Plaintiff has not "identified comparators." ECF No. 36 at PAGEID # 1877. But Plaintiff points to felons and people whose chemical dependency was at issue in their disciplinary proceedings as two comparator groups. *See* Compl. ¶¶ 42–43, ECF No. 1. Despite their similarities, certain members of these groups received indefinite suspensions, not disbarments. *Id.*

"Similarly situated" is a term of art and requires that the comparators be similar in "all relevant respects." *Paterek v. Vill. of Armada, Mich.*, 801 F.3d 630, 650 (6th Cir. 2015). The "similarly situated" inquiry does not demand "exact correlation" but rather seeks only "relevant similarit[ies]." *Loesel v. City of Frankenmuth*, 692 F.3d 452, 462–63 (6th Cir. 2012). "[T]he court must undertake a case-specific analysis to determine if the identified comparator employee is similarly-situated to the plaintiff." *Bhatara v. Potter*, No. 1:06-CV-527, 2008 WL 11351285, at *3 (S.D. Ohio Dec. 17, 2008). In this case, the Court

does not find such an analysis appropriate at the motion to dismiss stage, given that whether an individual is similarly situated or is an appropriate comparator is typically a question for the fact finder.  *Cf. Bobo v. United Parcel Serv., Inc.,* 665 F.3d 741, 757 (6th Cir. 2012) ("But whether the other identified supervisors who did not admit misconduct are similarly situated to Bobo is a jury question." (citation omitted)), *abrogated on other grounds by Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338 (2013).

Based on this, the Court **DENIES** the Justices' motion to dismiss Plaintiff's equal protection claim.

### IV.  MOTION FOR PRELIMINARY INJUNCTION

In tandem with his Complaint, Plaintiff also moved for declaratory and preliminary injunctive relief—namely, (1) a declaration that the Disbarment Rule violates the Constitution and the ADA, (2) a declaration that Plaintiff may petition for reinstatement under the same standards as those applied to indefinitely suspended attorneys, and (3) an injunction against Defendants' enforcement of the Disbarment Rule against him.  ECF No. 2.

### A.  Declaratory Relief

The Declaratory Judgment Act provides that a district court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  *Miami Valley Mobile Health Servs., Inc. v. ExamOne Worldwide, Inc.*, 852 F. Supp. 2d 925, 938 (S.D. Ohio 2012) (quoting 28 U.S.C. § 2201(a)).  Courts have discretion to

decide whether to entertain a declaratory judgment action and routinely "deny declaratory relief if an alternative remedy is better or more effective." *Grand Trunk W. R.R. Co. v. Consolidated Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984) (citing cases). Courts also consistently find that declaratory relief is inappropriate when "claims have already ripened into a cause of action." *Miami Valley*, 852 F. Supp. 2d at 938.

The declarations that Plaintiff seeks from the Court are undeniably subsumed within Plaintiff's ADA, due process, and equal protection claims. Indeed, the basis of those claims is that the Disbarment Rule violates the Constitution and federal law. The Court will decide whether that is true, and whether Plaintiff, as a result, should be able to petition for reinstatement (if at all) as if he had been indefinitely suspended, in connection with those claims that have survived dismissal.

Plaintiff's declaratory judgment requests have already ripened into causes of action, such that a declaratory judgment on these issues would be "duplicative and unnecessary." *Gregor v. Rice Drilling D, LLC*, No. 2:21-CV-3999, 2024 WL 169119, at *4 (S.D. Ohio Jan. 16, 2024). Accordingly, Plaintiff's motion is **DENIED** as to the declaratory relief he seeks.

### B. Injunctive Relief

The preliminary injunction portion of Plaintiff's motion similarly fails. To determine whether preliminary injunctive relief is warranted, courts balance four factors:

(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction.

*Grassi v. Grassi*, No. 24-3291, 2024 WL 4715614, at *3 (6th Cir. Nov. 5, 2024) (internal quotation marks and citations omitted).

"Although these factors are ordinarily balanced, the existence of irreparable injury is mandatory." *Id.* (internal quotation marks and citation omitted). "Mere speculation about, or bald assertion of, irreparable harm is insufficient." *Id.* (citation omitted). Moreover, injuries that can be adequately compensated with monetary relief are not "irreparable." *Id.* (citation omitted). Thus, absent a showing of a real or immediate threat, the plaintiff cannot show irreparable injury and, therefore, is not entitled to preliminary injunctive relief. *Id.* (citation omitted).

Although the Court found that Plaintiff has stated a claim as to each of his causes of action—which implies at least a decent likelihood of success on the merits—Plaintiff is not entitled to a preliminary injunction. Even putting aside the plain language in § 1983 barring injunctive relief against the Justices, Plaintiff has not shown that he would suffer irreparable injury without an injunction. True, courts have deemed constitutional and ADA violations as irreparable harm, but delays in seeking emergency relief severely undercut the propriety of preliminary injunctive relief. *See, e.g., Allied Erecting & Dismantling Co. v. Genesis Equip. & Mfg.*, 511 F. App'x 398, 405 (6th Cir. 2013). In this case, Plaintiff waited nearly

fourteen years after he was disbarred to file this lawsuit and more than a year after the Supreme Court of Ohio declined to amend that disbarment decision. The Court is thus not convinced that there is an immediate threat in this case necessitating a preliminary injunction.

Therefore, the Court **DENIES** Plaintiff's motion for a preliminary injunction.

## V. MOTION TO EXCLUDE EXPERT

In support of his supplemental preliminary injunction briefing, Plaintiff offered the "preliminary expert opinion" of Dr. Jeffrey Goldsmith, M.D. ECF No. 19-1. Defendants now move to exclude Dr. Goldsmith's opinion pursuant to Federal Rule of Evidence 702, challenging his qualifications. ECF No. 25.

Because the Court does not rely on Dr. Goldsmith's opinion in ruling on Plaintiff's preliminary injunction motion, however, Defendants' motion to exclude, ECF No. 25, is **DENIED as moot**.

## VI. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss, ECF No. 34, is **GRANTED in part** and **DENIED in part**. Defendants' motion is **GRANTED** as to (1) Plaintiff's requested injunctive relief against the Justices under § 1983, and (2) the allegations in Plaintiff's Complaint that assert a backward-looking challenge to Defendants' decision to disbar him. Defendants' motion is otherwise **DENIED**.

Plaintiff's motion for a preliminary injunction, ECF No. 2, is **DENIED**, and

Defendants' related motion to exclude Plaintiff's expert, ECF No. 25, is **DENIED**

**as moot**.

The Clerk shall terminate ECF Nos. 2, 25, and 34 as pending motions.

**IT IS SO ORDERED.**

**MICHAEL H. WATSON, JUDGE**
**UNITED STATES DISTRICT COURT**